[Civ. No. 19883.   Second Dist., Div. Three.   May 10, 1954.]

RAMONA JENKINS, Respondent, v. JOHN JENKINS, Appellant.

W. P. Butcher and Frank R. Crandall for Appellant.

Cornwall & Westwick and John A. Westwick for Respondent.

VALLÉE, J.—Appeal by John Jenkins, referred to as defendant, from a judgment which granted Ramona Jenkins, his wife, referred to as plaintiff, an interlocutory decree of divorce, custody of a minor child, John Lee Jenkins, and support for herself and the minor.

On July 8, 1949, plaintiff sued defendant for separate maintenance on the ground of cruelty. After a contest, the court found that defendant had been guilty of extreme cruelty. Plaintiff was granted a decree of separate maintenance, custody of John Lee, certain property, $75 a month for her support, $100 a month for the support of the son, and with the son the exclusive use of the parties' home. Defendant appealed from that judgment. On appeal the judgment was affirmed insofar as it granted separate maintenance, the right to support, certain property, and custody of the minor. It was reversed insofar as it awarded support for plaintiff and the son with directions to redetermine the same, and insofar as it awarded plaintiff and the son the exclusive possession of the home. (*Jenkins* v. *Jenkins*, 110 Cal.App.2d 663 [243 P.2d 79].)

In July 1951, when the trial court had before it the matter of determining the amount of support for plaintiff and John Lee, defendant filed an action for divorce. He alleged extreme cruelty on the part of plaintiff, specifying acts purported to have been committed after March 8, 1951, the date of the entry of the decree of separate maintenance. He also prayed for custody of John Lee. Plaintiff answered, denying the charges of cruelty and defendant's right to custody, and setting up the separate maintenance decree as a defense. She then filed a cross-complaint for divorce in which she pleaded the decree of separate maintenance; that it was final; that since its entry she had lived separate and apart from defendant and had not cohabited with him or forgiven him any of the offenses on

which the finding of extreme cruelty was based; and that in the separate maintenance action she had been awarded custody of John Lee.

The divorce action and the matter of the determination of the amounts to be awarded for support were consolidated. At the opening of the trial, defendant demurred to the special defense of the plea of the decree of separate maintenance in the answer to the complaint for divorce, and moved to strike it. He argued that the decree was not a defense to the acts of cruelty alleged in his complaint—acts occurring subsequent to the entry of the decree of separate maintenance. The court overruled the demurrer and denied the motion. Over the objection of defendant, the court proceeded to determine the amounts to be awarded for support. The record in the separate maintenance action was received in evidence.

One set of findings was made applicable to the issues in the two actions. The court found: 1. Both plaintiff and defendant are fit and proper persons to have the custody of John Lee, but that the best interests of the child require that he be awarded to plaintiff. 2. In the separate maintenance action defendant was found to have been guilty of extreme cruelty toward plaintiff and she was awarded a decree of separate maintenance from him and was authorized to live separate and apart from him; that judgment has since become final as to the parts herein referred to. Since the entry of the decree, plaintiff has lived separate and apart from defendant and has not cohabited with him or forgiven him any of the offenses on which the finding of extreme cruelty was based. 3. Plaintiff, the cross-complainant in the divorce action, should be granted an interlocutory decree of divorce from defendant on the ground of extreme cruelty. 4. Defendant's allegations of plaintiff's cruelty in his complaint for divorce are untrue. 5. Defendant should pay plaintiff $175 a month for her support and maintenance. 6. Defendant should pay plaintiff $100 a month for the support and maintenance of John Lee during his minority. One judgment was rendered accordingly, applicable to the issues in the two actions. Defendant appeals.

At the conclusion of the trial and after both sides had rested, the court, over the objection of defendant, talked to John Lee in chambers without the presence of a reporter or counsel. The court did not state for the record what the conversation had been. Defendant contends the hearing in chambers was contrary to the statute, beyond the jurisdiction of the court and a denial of due process. In *Morris* v.

*Morris,* 121 Cal.App.2d 707 [264 P.2d 106] we said (p. 709) : "There is nothing in the record as to any arrangement for the children to be interviewed by the court, although it is apparent that there was some agreement for it. The court made no statement of what the children had said in the interview. Plaintiff criticizes the practice as one which permitted the court to take evidence that was not known to the parties, or their attorneys. No request was made for a statement by the court. Nevertheless we think it would be the part of wisdom for the court to make a record of such interviews with children in custody cases in order to protect itself against any suspicion of unfairness on the part of the parent against whom the decision is rendered." We disapprove of the practice of a judge in a custody proceeding talking to a minor in private over the objection of either party. Such procedure may give rise to a serious constitutional question of due process. However, it did not in the case at bar. The findings recite that "the Court talked privately in chambers to John Lee Jenkins, the minor child of the parties hereto, but the Court makes its findings of fact and conclusions of law herein solely on the basis of the evidence introduced in open Court at the trial of said consolidated actions." We must assume that the judge did what he said he did and that he based his findings solely on the evidence received in open court and not on his talk with John Lee. In view of that fact it cannot be said that the procedure was prejudicial.

Defendant next contends that the motion to strike the special defense of the separation decree should have been granted; and that plaintiff, having failed to prove further acts of cruelty since the date of that decree, is bound by her former remedy of separate maintenance.

■ A decree of separate maintenance determines that as of the date of its entry the plaintiff was the innocent party and the defendant was the wrongdoer. ■ It is a bar to a suit brought on facts that had occurred prior to its entry. (*Gough* v. *Gough,* 101 Cal.App.2d 262, 268 [225 P.2d 668] ; *Chirgwin* v. *Chirgwin,* 26 Cal.App.2d 506 [79 P.2d 772].) ■ The fact that parties live apart after a decree of separation does not relieve them from their obligation to abstain from acts of cruelty towards one another. (*Williams* v. *Williams,* 37 Ariz. 176 [291 P. 993].) ■ A cause of action for divorce may be grounded on acts of cruelty committed subsequent to the decree of separation. (*Cardinale* v. *Cardinale,* 8 Cal.2d 762, 767-768 [68 P.2d 351] ; *Cook* v. *Cook,*

164 N.C. 272 [80 S.E. 178, 179]; *Zukerberg* v. *Zukerberg,* 188 Md. 428 [53 A.2d 20, 22]; 27 C.J.S. 830, § 174; 17 Am. Jur. 400, § 489.) ■ Assuming, without deciding, that the defense of the decree of separate maintenance should have been stricken from the answer to the complaint and defendant's demurrer thereto sustained, the action of the court was not prejudicial since the court found that defendant did not prove his allegations of cruelty purportedly committed after entry of the decree of separate maintenance.

■ A decree of separate maintenance in favor of a plaintiff does not bar the plaintiff's subsequent action for a divorce on the same ground. [I]n the jurisdictions where it [the question] has arisen the holding has generally been that a decree of separation is not a bar to divorce on the same ground, that the two remedies are not inconsistent and the doctrine of election does not apply, that the two have different objects and effect, one is in a sense ancillary to the other, the cause of action is not the same, and there is therefore no merger of the cause of action." (*Kunze* v. *Kunze,* 153 Minn. 5 [189 N.W. 447, 448, 25 A.L.R. 1045]; *Murdock* v. *Murdock,* 148 App.Div. 564 [132 N.Y.S. 964, 966]; *Williams* v. *Williams,* 33 Ariz. 367 [265 P. 87, 89, 61 A.L.R. 1264]; 17 Am.Jur. (Supp.) 48, § 178.1; anno: 138 A.L.R. 367. See *Slavinsky* v. *Slavinsky,* 287 Mass. 28 [190 N.E. 826].) ■ The purpose of a suit for separate maintenance is to specifically enforce the general duty of the husband by directing certain definite payments to be made at regular intervals for the wife's support. The status of the parties may be restored by reconciliation, in which case the necessity for the separate maintenance would terminate. (Civ. Code, § 137; *Monroe* v. *Superior Court,* 28 Cal.2d 427, 429 [170 P.2d 473]; *Johnson* v. *Johnson,* 33 Cal.App. 93, 96 [164 P. 421].) In *Quagelli* v. *Quagelli,* 99 Cal.App. 172 [227 P. 1089], the plaintiff in 1925 had obtained a decree of separate maintenance founded on extreme cruelty. There was no appeal from the judgment. Later plaintiff sued for a divorce on the grounds of cruelty, desertion, and habitual intemperance. The complaint contained specification of acts of cruelty running from 1913 to 1925. It was held that the decree of separate maintenance based on the finding of extreme cruelty was "conclusive evidence in the instant case to prove the charge of extreme cruelty. . . . Unless the defendant disproved the judgment in the maintenance action the issue on extreme cruelty must necessarily have been found for the plaintiff."

■ In the present case, plaintiff pleaded the decree of separate maintenance, the finding that defendant had been found guilty of extreme cruelty, that the decree had become final, and that since its entry she had lived separate and apart from defendant and had not cohabited with him or forgiven him any of the offenses on which the finding of cruelty was based. She prayed for a divorce. Defendant did not disprove the judgment of separate maintenance nor the other facts alleged. The court therefore properly found the issue of extreme cruelty in accordance with the decree in the maintenance action.

In defendant's complaint for divorce, he set forth 22 particulars allegedly constituting extreme cruelty on the part of plaintiff. The court found that these allegations were not true. He contends the finding is contrary to the evidence. ■ Whether in any given case there has been extreme cruelty is a question of fact to be deduced from all the circumstances in the particular case, keeping always in mind the intelligence, refinement, and delicacy of sentiment of the complaining party. The finding of the trial court, based on any reasonable analysis of the facts and circumstances as shown by the evidence, will not be disturbed on appeal. (*Walker* v. *Walker*, 108 Cal.App.2d 605, 607 [239 P.2d 106].) No purpose would be served in detailing the evidence. Suffice it to say that it clearly appears from the record that the court did not believe the testimony of defendant. The trial court, with the witnesses before it, having determined that defendant's allegations of extreme cruelty were not true, that question is settled.

It is next contended that the findings are contradictory and uncertain in that it cannot be ascertained whether the finding against defendant's charge of cruelty was based on plaintiff's decree of separate maintenance or on a failure of his proof. The court specifically found that the allegations of extreme cruelty were not true. The finding was clearly based on defendant's failure to prove the acts of cruelty alleged in his complaint for divorce.

Defendant says that the award of alimony cannot be justified in the light of his income and all the circumstances shown by the evidence. "Section 139 of the Civil Code provides that the court may compel the husband to make 'suitable allowance' for the wife, 'having regard to the circumstances of the parties respectively.' Such suitable allowance is a

matter for the determination of the trial court, having in mind those circumstances. (*Barham* v. *Barham,* 33 Cal.2d 416, 431 [202 P.2d 289].) ██ The amount to be paid by the husband is within the discretion of the trial court. (*Bowman* v. *Bowman,* 29 Cal.2d 808, 811 [178 P.2d 751, 170 A.L.R. 246].)'' (*Thomasset* v. *Thomasset,* 122 Cal.App.2d 116, 131 [264 P.2d 626].) ██ In fixing the allowance to the wife, the court may consider the earnings of the husband and his ability to earn money. (*Melny* v. *Melny,* 90 Cal.App.2d 672, 678 [203 P.2d 588].)

In the separate maintenance action, plaintiff received only a refrigerator, a deep freeze, and $700 for her share of the community property. Practically all of defendant's property is his separate estate. ██ At the time of the second trial, in 1952, defendant had more property than he had at the first trial. He owns a 225-acre ranch near Santa Maria, the value of which he refused to estimate though he has owned it for 32 years. The ranch is encumbered to the extent of about $2,500. Half of the acreage is leased at a rental of $8,000 a year. He also owns two separate rental producing dwellings in the city of Santa Maria, the value of which he refused to estimate; he receives $55 a month rental from one that is partially furnished, and had, up to a week before the trial, received $60 from the other which is unfurnished. He owns approximately 21 shares of stock in the Pacific Gas and Electric Company, which were worth about $36 a share at the time of trial, and two shares in the Santa Maria Club, worth $200. He owns a half interest in the joint tenancy home—a five bedroom, four bath house—the value of which he refused to estimate though he did not repudiate plaintiff's estimate that her half interest was worth $20,000. He owns defense saving bonds in the sum of $10,000, has $3,000 in a checking account, and has between $3,000 and $3,500 in a savings account. He also owns two automobiles. He owes no debts—all the property being free of encumbrances except the ranch.

Defendant does not work, but claims to be dependent entirely on the income from his separate property. His gross income for 1952 was $12,111.60; the farm expenses $2,903.21, rental expenses $587, or a total of $3,490.21; leaving a net of $8,621.39 from which he purports to deduct $8,299.93 for personal expenses, leaving a net balance of $321.46. He claims that he requires $100 a month to live.

We cannot say as a matter of law that the trial court abused

its discretion in awarding plaintiff $175 a month for her support and $100 a month for the support of John Lee.

Defendant contends the finding that plaintiff should have the custody of John Lee, the 16-year-old son, is unsupported by the evidence. He claims that under subdivision 2 of section 138 of the Civil Code the boy should have been placed in his care and custody. This subdivision provides: "As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, it should be given to the mother; if it is of an age to require education and preparation for labor or business, then to the father." ▪ The last clause does not give a father the absolute right to the custody of a child under such circumstances and conditions. (See *Scott* v. *Barnes*, 118 Cal.App.2d 271, 275 [257 P.2d 700]; *Munson* v. *Munson*, 27 Cal.2d 659, 666 [166 P.2d 268].) The phrase "other things being equal" leaves a large measure of discretion with the trial court. (*Munson* v. *Munson, supra*, 666.) In the first instance it is for that court to determine, after considering all the evidence, how the best interest of the child will be served. ▪ The question is to be determined solely from the standpoint of the child, and the feelings and desires of the contesting parents are not to be considered except insofar as they affect the best interests of the child. (*Taber* v. *Taber*, 209 Cal. 755, 756-757 [290 P. 36].)

The record in this case discloses no such abuse of discretion as would warrant a reviewing court in disturbing the award of custody to the mother.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 7, 1954.