[Civ. No. 23026.   Second Dist., Div. Two.   July 2, 1958.]

RUDOLF LAWATCH, Appellant, v. GERTRUDE J. LAWATCH, Respondent.

Bodkin, Breslin & Luddy and Henry G. Bodkin for Appellant.

C. E. Spencer, Gray, Binkley & Pfaelzer, William P. Gray and Orville A. Armstrong, Jr., for Respondent.

FOX, P. J.—This is the second chapter in the litigation involving the marital difficulties and property rights of Mr. and Mrs. Lawatch.

The first chapter was initiated by Mrs. Lawatch's filing a complaint for separate maintenance which, however, was amended to state a cause of action for divorce. The husband countered with a cross-complaint also seeking a divorce. This first suit resulted in an amended decree on February 18, 1952, denying each party a divorce. The court found that each of the parties was guilty of extreme cruelty but denied either a decree on the ground of recrimination.[1] However, the court did decree that the wife was entitled to live separate and apart from her husband, and to have the custody of the six minor children; the court ordered the husband to provide for the support and maintenance of the wife and the children, and ordered him to vacate the family home. The court found that all the property of the parties was community property, and that it was to the best interests of the parties not to divide

[1]This decree was rendered prior to *DeBurgh* v. *DeBurgh*, 39 Cal.2d 858 [250 P.2d 598].

the property at that time. There was no appeal from this decree.

The present action for divorce was commenced by the husband in 1956. The wife filed a cross-complaint also seeking a divorce. The court found that each party was guilty of extreme cruelty, and granted a decree of divorce to each. It held that all the property was community property and divided it equally between the parties. To effectuate this result, the court awarded the wife a lien for approximately $33,000 on the business known as "Lawatch, Ltd." The court awarded the wife $400 per month alimony, custody of the six children, and $100 per month support for each of them.

The husband appeals from those portions of the interlocutory decree which provide:

1. That the wife is entitled to a divorce;
2. That the custody of the minor children is awarded to the wife;
3. That the home is awarded to the wife;[2]
4. That the wife should have a lien for $33,335.47 on the property, business and goodwill of Lawatch, Ltd.;
5. That the wife is awarded 250 shares of the stock of Lawatch Display Fixtures, Inc.;[2a] and
6. That the wife shall receive $400 a month alimony and $100 a month for support of each of the six children.

The husband's first contention is that the evidence does not sustain the court's finding that he was guilty of extreme cruelty toward his wife.

We need do no more here than adumbrate the husband's misbehavior since the February 1952 decree: In defiance of the court's order, he remained in the family home for some 14 months after the entry of the decree. He repeatedly told his wife that she was crazy, often in the presence of the children. He told the children many times that they did not have to mind their mother. At times, when the wife had company, he would loiter around outside or underneath the house in an effort to overhear the conversation. Upon occasion the husband was intoxicated in the presence of the wife and children. His failure to pay federal income taxes caused a lien to be filed against the home, thereby greatly disturbing his wife. Although he was not supposed to be living in the house and the custody of the children had been awarded to

[2, 2a]The husband has apparently abandoned his appeal from these portions of the decree because he has failed to discuss them in his brief. (See *Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1, 17 [47 P.2d 462].)

the wife, on more than one occasion he administered physical punishment to one of the children. The husband's remaining in the home created a difficult situation and caused the wife and children to live under a great deal of tension.

The wife's testimony indicated that the husband's conduct directly and detrimentally affected her health; that her physical condition improved after he finally moved out of the home, pursuant to a subsequent court order.

■ "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact. [Citations.]" (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231].) In *Keener* v. *Keener,* 18 Cal.2d 445 [116 P.2d 1], the wife alleged that during the last three years of her married life plaintiff on numerous occasions lost his temper and found fault with her in the presence of friends and acted in a peculiar manner; that he remarked in the presence of friends that she was not a good or proper wife; that he told her she should get out and support herself, and that he requested her to apply for work. She alleged that these acts caused her grievous mental anguish. At the trial the wife testified regarding the acts of her husband substantially in accord with the allegations of her pleading. She was granted a divorce. On appeal the Supreme Court rejected the husband's contention that the evidence was insufficient to sustain the decree. ■ In the course of the opinion the court stated (pp. 447-448) : "In each case the infliction of 'grievous mental suffering' is a question of fact to be deduced from the circumstances of the case, in the light of the intelligence, refinement and delicacy of sentiment of the complaining party. [Citations.] A correct decision must depend upon the sound sense and judgment of the trial court. [Citations.] Its conclusion will not be disturbed unless the evidence is so slight as to indicate an abuse of discretion. [Citations.]

■ "A course of conduct by which one party to the marriage continually indicates dissatisfaction with the other and makes such dissatisfaction known to friends of the parties may well cause humiliation, embarrassment and mental anguish to a degree constituting extreme cruelty. In the instant case plaintiff [the husband] was a teacher in the public schools and his loss of temper and repeated criticisms of defendant [the wife] in the presence of their friends and

his statements, after more than 25 years of marriage, that she should support herself were sufficient to constitute extreme cruelty if they prove to have caused her grievous mental suffering. The trial judge was in a position to observe the intelligence, refinement and delicacy of sentiment of the defendant and to determine whether plaintiff's conduct caused her grievous mental suffering. In the absence of an abuse of discretion, his conclusion cannot be disturbed.''

In *Bixby* v. *Bixby*, 120 Cal.App.2d 495, 498 [261 P.2d 286], the court stated: ''Proof of extreme cruelty may be made by testimony of cruel remarks made by one spouse to the other.'' (See also *Maloof* v. *Maloof*, 175 Cal. 571, 573 [166 P. 330]; *Stevens* v. *Stevens*, 92 Cal.App.2d 85, 87 [206 P.2d 418].)

Applying these principles it cannot be said as a matter of law that the trial court abused its discretion in determining that the conduct of the husband constituted extreme cruelty toward his wife.

The findings in the first action between these parties fortify our conclusion herein. In the first action the court found that the husband was guilty of extreme cruelty. Although he remained in the home some 14 months after the entry of that decree, the evidence clearly shows that they lived separate and apart and that there was no condonation of his misconduct. Under such circumstances the finding of the trial court in the first action lends support to the findings and judgment in the wife's favor in the instant case. (*Jenkins* v. *Jenkins*, 125 Cal.App.2d 109, 115 [269 P.2d 908]; *Quagelli* v. *Quagelli*, 99 Cal.App. 172, 175 [277 P. 1089].) In the Jenkins case the wife had previously secured a decree of separate maintenance based upon the husband's extreme cruelty. Thereafter, in a suit for divorce, the wife pleaded the decree of separate maintenance, the finding that the husband was guilty of extreme cruelty, that the decree had become final and that since its entry she had lived separate and apart from him and had not cohabited with him or forgiven him any of the offenses on which the finding of cruelty was based. The husband did not disprove the judgment of separate maintenance nor the other facts alleged. The trial court found on the issue of extreme cruelty in accordance with the decree in the maintenance action. The appellate court held that the trial court could properly base its finding of extreme cruelty on the facts proved in the prior action for separate mainte-

nance. *Quagelli* v. *Quagelli, supra,* also supports this principle.

The husband also argues that the wife's testimony on the issue of extreme cruelty is not sufficiently corroborated. ██ "The extent of the corroboration necessary for the granting of a decree of divorce is not defined in any of our statutes. It is not necessary to corroborate all of the acts of cruelty charged by the party to whom the decree is granted. Where a number of charges of cruelty have been made, corroboration of a single act of cruelty may be sufficient. [Citations.] Moreover, the rule requiring corroboration is not so strictly applied in hotly contested divorce actions as it is in actions where a decree is demanded upon the default of the opposing party. ██ The principal object of the corroboration rule is to prevent collusion between the parties, and where it is clear from the evidence in a contested action that there is no collusion the court is justified in granting the decree upon evidence which is only slightly corroborated if otherwise the court is satisfied that the prevailing party is entitled to a decree. [Citations.]" (*Serns* v. *Serns,* 70 Cal.App.2d 527, 529 [161 P.2d 417]; see also *Bixby* v. *Bixby,* 120 Cal.App.2d 495, 500 [261 P.2d 286]; *LaVigne* v. *LaVigne,* 96 Cal.App.2d 531, 534 [216 P.2d 75]; *McGann* v. *McGann,* 82 Cal.App.2d 382, 386-387 [186 P.2d 424].) ██ Tested by these principles the corroboration here was sufficient. It suffices to say that Dorothy Chacon, who worked in the home as a helper, testified that on several occasions she overheard Mr. Lawatch tell the children that they did not have to mind their mother; she also testified concerning the occasions when he inflicted physical punishment upon some of the children.

██ The husband contends that the portion of the decree ordering him to pay his wife $400 per month alimony is "contrary to [the] evidence and the law." His position is based solely upon the assumption that there was insufficient evidence to support the finding of extreme cruelty on his part. Since we have already determined that the evidence was sufficient to sustain that finding, it follows that this contention is without merit.

The husband makes the unpersuasive contention that the portion of the decree granting the wife custody of the children is "against the evidence and the law." ██ In a divorce proceeding involving the custody of minor children primary consideration must be given to their welfare. ██ "The court is given a wide discretion in such matters,

and its determination will not be disturbed upon appeal in the absence of a manifest showing of abuse." (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 208 [259 P.2d 656] ; see also *Gantner* v. *Gantner*, 39 Cal.2d 272, 275 [246 P.2d 923] ; *Taber* v. *Taber*, 209 Cal. 755, 757 [290 P. 36].) Preliminarily, it should be noted that the decree in the first case awarded custody of the children to the mother. **[12]** In the instant case the court again awarded her their custody after having observed the parties in court, heard the testimony, visited with the children, and considered the report of the court-appointed investigator. Dorothy Chacon testified that Mrs. Lawatch displayed great affection for all her children. The husband's own witness, Mrs. Sutterle, testified that she had always been of the opinion that Mrs. Lawatch "is a very fine mother." The investigator's report stated that "the school records and statements of school authorities indicated that the children have received excellent care and supervision at least as far as their adjustment and appearance at school are concerned." After having interviewed the children, the father, mother, the school authorities, and various other witnesses, the investigator recommended that "the care, custody and control of the minor children be . . . continued with the mother." He further recommended that the father be given reasonable visitation rights. From the foregoing it is apparent that there is ample evidence to support the trial court's award of custody of the children to the mother, and that there was clearly no abuse of discretion. The husband argues against the award of custody to the wife on the theory that she has prejudiced the older children against him. There is substantial evidence to negate this charge. Dorothy Chacon, who was constantly present in the home, testified that Mrs. Lawatch always told her children to respect their father; she never heard Mrs. Lawatch tell the children anything to the contrary. The mother stated that she never made derogatory remarks to the children about their father nor objected to his visiting them. The husband also argues that since the court found the wife to have been guilty of extreme cruelty toward him, it abused its discretion in awarding the children to her. ▆ It does not necessarily follow from the fact that the wife was guilty of extreme cruelty toward her husband that she was not a good mother and a proper person to have the custody of their children. The court could properly award her the custody of the children even though she was guilty of marital misconduct. (*Morgan* v. *Morgan*, 103 Cal.App.2d

776, 777 [230 P.2d 130]; *Newell* v. *Newell,* 146 Cal.App.2d 166, 179 [303 P.2d 839]; *Kettelle* v. *Kettelle,* 110 Cal.App. 310, 313 [294 P. 453].)

The sole basis for the husband's attack upon the award of support for the children is that their custody should not have been granted to the wife. Since we have determined that the award of custody was proper, his attack loses its significance.

The husband's final contention is, in effect, that the evidence is insufficient to support the court's finding that all the property of the parties was community property. He bases this contention on the theory that the first action resulted in a decree of separate maintenance in 1952, and that his earning since such degree were his separate property. (Civ. Code, § 169.1.) We agree with the husband's assertion that the 1952 decree was in effect a decree for separate maintenance. ■ While it is ordinarily true that a husband's earnings subsequent to a separate maintenance decree are his separate property, the trial court in the instant case was justified in finding to the contrary. In this connection the court found:

"At all times subsequent to February 18, 1952 the parties have considered all of their assets, including the business conducted under the name 'Lawatch, Ltd.' to be community property, and all of the assets of the parties are now found by the Court to be community property. At all times since February 18, 1952, the parties have also considered their respective earnings to be community property, and such earnings are now found by the Court to have been community property."

■ It is elementary that a husband and wife may change the status of their property from separate to community by an executed oral agreement. (*Kenney* v. *Kenney,* 220 Cal. 134, 136 [30 P.2d 398], and cases cited therein.) ■ "All that is required to show an executed oral agreement of transmutation is proof of the parties' acts and conduct in dealing with their property." (*Estate of Raphael,* 91 Cal.App.2d 931, 939 [206 P.2d 391].) ■ "It is not essential to show an express oral agreement, but the status of the property may be shown 'by the very nature of the transaction or appear from the surrounding circumstances.' " (*Long* v. *Long,* 88 Cal.App.2d 544, 549 [199 P.2d 47]; see also *Title Insurance etc. Co.* v. *Ingersoll,* 153 Cal. 1, 5 [94 P. 94]; *Marvin* v. *Marvin,* 46 Cal.App.2d 551, 556 [116 P.2d 151].)

Initially we should point out that it was determined in the

first action that all the property of the parties was community. This included the residence, the business known as Lawatch, Ltd., and the real property on which it was located. The court also determined it was in the best interest of the parties not to divide the property at that time. The parties still owned the residence and the business, along with its real property at the time of the present action. So we are concerned only with the husband's earnings since the 1952 decree.

After the first decree the husband did nothing to indicate that he was treating any part of the income from the family business as his separate property. He deposited all such income in the same account and drew upon that account to pay for the operation of the business as well as for the support and maintenance of his wife, the children and himself. He later opened a "reserve account" for business reasons but made disbursements of the same character from that account. Moreover, in procuring a loan in connection with the business, the husband sought the wife's signature on certain documents; in the husband's presence his attorney explained to her the necessity for her signature and stated that she owned half of the business. The husband made no contrary statement. Some of the most significant items of evidence relating to the question before us are the income tax returns of the parties for the years 1952 through 1955. ▮▮▮ It is well recognized that income tax returns may be indicative of an agreement concerning the character of the income reported therein. (*Estate of Cummins,* 130 Cal.App.2d 821, 829 [280 P.2d 128]; *Handley* v. *Handley,* 113 Cal.App.2d 280, 284 [248 P.2d 59]; *Frymire* v. *Brown,* 94 Cal.App.2d 334, 339 [210 P.2d 707]; *Estate of Raphael, supra,* p. 939; *Stice* v. *Stice,* 81 Cal.App.2d 792, 797-798 [185 P.2d 402]; *Heck* v. *Heck,* 63 Cal.App.2d 470, 474-475 [147 P.2d 110].) The husband in the instant case filed joint income tax returns for 1952, 1953 and 1955. These returns were of course signed also by the wife. In these returns the husband took advantage of the provisions for the splitting of income. This conduct is highly significant and indicates that they were treating all his income as community property. This is especially true because these returns were filed subsequent to the separate maintenance decree by which the parties became legally separated; under Internal Revenue Code, section 6013(d) (2).[3] the parties should not even have filed joint returns after such

[3]Section 6013(d) (2) of the 1954 Code replaced section 51(b) (5) (B) of the 1939 Code.

decree.[4] ▮▮▮ In 1954 the parties filed separate returns. However, one half of the total income from the business was reported on each return. This, too, is persuasive evidence of an agreement that the parties' earnings would be community property. It is also to be noted that the husband never claimed that his earnings since the first decree were his separate property until some time after the instant action was filed in 1956. From the foregoing facts and circumstances the trial court reasonably could conclude that the husband's earnings since the first decree had become transmuted into community property by virtue of an agreement between the parties. Thus, it cannot be said as a matter of

---

[4]The cases relied upon by the husband, such as *Commissioner of Int. Rev.* v. *Ostler*, 237 F.2d 501, and *United States* v. *Holcomb*, 237 F.2d 502, are not in point. They hold merely that Internal Revenue Code section 51(b) (5) (B), which preceded section 6013(d) (2), does not preclude the filing of a joint return by parties who have obtained an interlocutory decree of divorce. The pertinent language in the code section is: ''[A]n individual who is legally separated from his spouse under a decree of divorce *or* of separate maintenance shall not be considered as married. . . .'' (Emphasis added.) The theory underlying the above decisions is that in referring to a ''decree of divorce'' the legislators meant a final decree terminating the marriage, and since an interlocutory decree of divorce does not terminate the matrimonial status of the parties thereto, they are still married within the meaning of the code section. An altogether different situation exists when a separate maintenance decree is involved. This is illustrated by the court's discussion in *Marriner S. Eccles*, 19 T. C. 1049, aff'd, *Commissioner of Int. Rev.* v. *Eccles*, 208 F.2d 796 (this case was the principal authority relied upon in both the Ostler and the Holcomb cases). In the Eccles case the court stated (19 T.C. at 1051): ''If the [interlocutory] decree operated as a decree for separate maintenance . . . the respondent [commissioner] must prevail, for as the petitioner must agree the parties to it were legally separated.'' The court went on to hold that under the laws of Utah the interlocutory decree did not have the effect of a decree for separate maintenance and came to the conclusion that ''the parties were not legally separated under a decree of separate maintenance'' (p. 1053). It is clear from the opinion that if a separate maintenance decree had been in effect, the petitioner would not have been permitted to file a joint return. An implication to the same effect may be found in *Commissioner of Int. Rev.* v. *Evans*, 211 F.2d 378, which dealt with the question of whether alimony payments received by a spouse while an interlocutory decree was in effect were taxable under a provision which used wording similar to that found in section 6013(d) (2). There, as in the Eccles case, the court distinguished an interlocutory decree of divorce from a separate maintenance decree (this time under Colorado law), impliedly recognizing that a different result would obtain if a decree for separate maintenance had in fact existed.

From the foregoing it is clear that parties to a separate maintenance decree may not file joint returns for tax periods ending after the entry of such decree. The Ninth Circuit cases dealing with interlocutory decrees of divorce cannot detract from the clear language of the statute that ''an individual who is legally separated from his spouse under a decree . . . of separate maintenance shall not be considered as married. . . .''

law that the evidence is insufficient to support the findings on this issue.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied July 28, 1958, and appellant's petition for a hearing by the Supreme Court was denied August 28, 1958.  Carter, J., was of the opinion that the petition should be granted.