ESTATE OF ERNEST D. HASELTINE, DECEASED, ELIZABETH N. HASELTINE, ADMINISTRATRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Estate of Haseltine v. Commissioner
Docket No. 8015-72.
United States Tax Court
T.C. Memo 1976-278; 1976 Tax Ct. Memo LEXIS 125; 35 T.C.M. (CCH) 1242; T.C.M. (RIA) 760278; September 1, 1976, Filed H. J. Kaplan, for the petitioner. John Lahart, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioner's income taxes, plus additions to the tax under sections 6651(a) [1] and 6653(a), for the years in issue: Addition to
Addition to
tax pursuant
tax pursuant Year
Deficiency
to § 6651(a)
to § 6653(a) l1961
$ 6,103.03
$ 2,079.75
$ 448.58
1962
7,651.26
2,820.54
564.11
1963
1,089.78
425.91
85.18
1964
769.64
273.72
57.04
1965
3,616.14
1,328.17
272.16
Because of concessions made in this case, the only issues for decision are: (1) Whether the earnings of Ernest D. Haseltine, deceased, during the years 1961 through 1965, respectively, were separate or community property. (2) Whether the petitioner *127 is liable for additions to tax under section 6651(a) on account of failure to timely file returns for any of the taxable years 1961 through 1965, respectively. (3) Whether the petitioner is liable for additions to tax under section 6653(a) on account of underpayment arising from negligence or intentional disregard of rules and regulations for any of the taxable years 1961 through 1965, respectively. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Ernest D. Haseltine filed delinquent Federal income tax returns as a married individual filing separately for the years 1961 through 1965. At the time he filed his petition, he resided in Menlo Park, California. On January 9, 1973, Mr. Haseltine died, and subsequently Elizabeth N. Haseltine (his wife at the time of his death) was appointed administratrix of his estate. Elizabeth N. Haseltine as Administratrix of the Estate of Ernest D. Haseltine ("petitioner") was thereafter substituted as a party to this action. Ernest D. Haseltine ("decedent") and Jessie W. Haseltine ("Jessie") were married on August 15, 1955 in Carson City, Nevada. Immediately thereafter, they moved to *128 California where they both were domiciled during the relevant taxable years. Before marrying Jessie, decedent had been a life insurance underwriter in Massachusetts. During their marriage, decedent continued to work as a life insurance underwriter for various insurance companies. Decedent's earnings consisted of commissions and renewals from the sale of insurance policies. In some cases the renewals on the sale of a policy would continue for as long as 9 years after the policy was issued. Decedent and Jessie had an understanding that the renewal commissions attributable to insurance policies sold prior to the marriage were to remain decedent's separate property. No understanding or agreement existed with respect to decedent's income earned during the marriage.However, in spite of their understanding, renewals attributable to years prior to their marriage were apparently commingled with commissions and renewals attributable to years during their marriage. During their marriage Jessie was not employed but she received amounts varying from $500 to $2,000 per year from a testamentary trust. These payments were commingled with the decedent's earnings from his activities as a life *129 insurance underwriter and were used in his business as well as for family expenses. In the early years of their marriage, decedent managed and controlled the family finances and provided Jessie with an allowance for household and personal expenses. Sometime in November 1960 marital difficulties precipitated an alteration in this financial arrangement. Thereafter Jessie received a minimum allowance for necessities, and decedent continued handling the major portion of the family expenses. The marriage continued to experience difficulties, and on June 23, 1962, Jessie filed a complaint for separate maintenance in the Superior Court for the County of Santa Clara. This action was disposed of by a Stipulation and Order Pendente Lite, filed on August 10, 1962, which provided, inter alia, that both parties were entitled to live in their home and that decedent was to pay Jessie $1,000 per month for the support of herself and their children. [2]
Decedent complied with the support provision of the Order for one month; thereafter he merely paid for groceries and continued *130 to pay the mortgage payments on their home until June 1964. On August 15, 1964, Jessie obtained a court order evicting decedent from their home. Sometime afterward, Jessie began an action for divorce which resulted in the entry of an interlocutory decree of divorce on October 27, 1966, and final decree of divorce on November 3, 1966. The Superior Court adjudicated the respective property rights of decedent and Jessie and found in part, as follows: IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all of the property of the parties is community property and that the equity in the same is hereby divided equally between the parties as hereinafter specified. Prior to 1961 decedent and Jessie filed joint Federal income tax returns. [3] Decedent personally prepared and filed the 1959 joint return and caused an accounting firm to prepare the 1960 joint return. For the years 1961 through 1965, neither decedent nor Jessie filed timely separate or joint returns. During this period decedent maintained records of his financial affairs and made a single estimated tax payment of $326.25 for his 1961 income taxes. On January 8, 1969, decedent *131 was charged under a four count information with willfully and knowingly failing to file income tax returns for the years 1962 through 1965. He was subsequently found guilty on two counts and acquitted on two counts. On September 24, 1970, decedent filed delinquent separate income tax returns for the years 1961 through 1965, reporting and claiming only one-half of the combined income and itemized deductions attributable to him and Jessie. During the aforementioned years, decedent's net business income from his activities as a life insurance underwriter was as follows: 1961
$31,128.49
1962
36,590.76
1963
13,994.53
1964
8.899.62
1965
24,210.29 For the same period, the combined total allowable itemized deductions of decedent and Jessie were as follows: 1961
$ 6,325.93
1962
7,916.30
1963
5,649.11
1964
1,822.06
1965
6,033.79
Respondent in his statutory notice of deficiency determined that decedent's net business income for the years 1961 through 1965 was his separate property and not community property, and should have been reported by him in its entirety. [4] Respondent also determined additions to tax for failure to file timely tax *132 returns for the years in question and for negligently underpaying his tax. OPINION The primary issue in this case is whether decedent's income during the years 1961 through 1965 was community property or separate property. If the income was community property as decedent claims, then one-half was properly reported by decedent on his separate tax return. However, if decedent's income was separate property, as respondent claims, the entire amount should have been reported by him. United States v. Malcolm,282 U.S. 792 (1931); Poe v. Seaborn,282 U.S. 101 (1930). Respondent contends that at the inception of their marriage or sometime prior to January 1, 1961, decedent and Jessie entered into an implied agreement that all of decedent's income was to be his separate property. *133 Respondent argues that the acts and conduct of the parties "suggest" the existence of an agreement transmuting the community property into separate property. Petitioner asserts that there was no such agreement, and we agree. In determining whether earnings are community or separate property, the community property laws of the domicile of the earner are applied. Poe v. Seaborn,supra at 110; Marie R. Owens,26 T.C. 77, 88 (1956); Marjorie Hunt,22 T.C. 228, 230 (1954). Here we found that during the relevant taxable years, decedent and Jessie were domiciled in California, and therefore California law governs. Under California law a statutory presumption exists that earnings of the husband are community property. Cal. Civil Code, sec. 164 (West, 1954). [5] "Clear and satisfactory proof" is required to rebut this presumption. In re Jolly's Estate,196 Cal. 547, 238 P. 353 (1925); In re Rolls' Estate,193 Cal. 594, 226 P. 608 (1924). *134 Such "clear and satisfactory proof" includes persuasive evidence of the existence of an agreement between a husband and wife transmuting community property into separate property. Mears v. Mears,180 Cal. App. 2d 484, 4 Cal. Rptr. 618, 627-628 (1st Dist. Ct. App. 1960) overruled on another issue See v. See,64 Cal. 2d 778, 415 P. 2d 776, 781, 51 Cal. Rptr. 888 (1968). Cf. Woods v. Security First National Bank of Los Angeles,46 Cal. 2d 697, 299 P. 2d 657 (1956); Tomaier v. Tomaier,23 Cal. 2d 754, 146 P. 2d 905 (1944). The agreement may be express or implied, written or oral. Tomaier v. Tomaier,supra;In re Sears' Estate,182 Ca. App. 2d 525, 6 Cal. Rptr. 148 (2nd Dist. Ct. App. 1960); Edwin M. Petersen,35 T.C. 962, 967 (1961). The acts and conduct of the parties may show the existence of an agreement. Durker v. Zimmerman,229 Cal. App. 2d 203, 40 Cal. Rptr. 227 (1st Dist. Ct. App. 1964); Lawatch v. Lawatch,161 Cal. App. 2d 780, 327 P. 2d 603 (2nd Dist. Ct. App. 1958); In re Raphael's Estate,91 Cal. App. 2d 931, 206 P. 2d 391 (2nd Dist. Ct. App. 1949); *135 Long v. Long,88 Cal. App. 2d 544, 199 P. 2d 47 (2nd Dist. Ct. App. 1948). However, the mere acquiescence by a wife in the husband's management and control of the community earnings will not prove the existence of an agreement. [6]In re Mendenhall's Estate,182 Cal. App. 2d 441, 6 Cal. Rptr. 45, 48 (4th Dist. Ct. App. 1960). Here, decedent exercised management and control of the earnings throughout the marriage. He used some of the earnings for expenses related to his employment as a life insurance underwriter and gave Jessie an allowance for household and personal expenses. Jessie's mere acquiescence to decedent's management and control of the earnings does not, standing alone, suggest the existence of an agreement. Moreover, Jessie's testimony *136 fails to support respondent's contention. She testified that no agreement existed as to the community earnings. However she also stated that there was always talk that the renewal commissions earned prior to the marriage were to remain decedent's separate property. Even so, because of commingling of decedent's separate earnings with community earnings and Jessie's inheritance in such a manner to make segregation impossible, and the use of the commingled funds to pay community expenses as well as business expenses, the entire earnings must be treated as community property. Cf. See v. See,supra. Finally, in the divorce action, the Superior Court found as a fact that all the property of decedent and Jessie was community property. This finding was set out in the interlocutory decree of divorce and was incorporated in the final decree. In light of these facts, we hold that the earnings were community property and no agreement effectively transmuting the community property into separate property existed. Therefore, decedent was required to report only one-half of the community earnings on his separate tax returns and was liable for tax on only that one-half *137 of the earnings. [7]
United States v. Malcolm,supra;Charloette J. Kimes,55 T.C. 774 (1971); Marjorie Hunt,supra.
Respondent further asserts that petitioner is liable for additions to tax under section 6651(a) for failure to timely file his returns, and under section 6653(a) for negligent underpayment of taxes. Section 6651(a)(1) provides that an addition to tax will be imposed unless petitioner shows that the late filing was due to reasonable cause. Petitioner, on whom the burden of proof rests ( C. Fink Fischer,50 T.C. 164, 177 (1968)), presented no evidence on this issue. We hold that petitioner has failed to carry that burden and is liable for additions to tax under section 6651(a). Section 6653(a) provides for an addition to tax of 5 percent of the "underpayment" where any part of such underpayment is due to negligence or intentional disregard of rules and regulations. The burden of proof again rests on petitioner to rebut *138 respondent's determination. Petitioner offered no evidence on this issue, but argues that, since no deficiency exists, no additions to tax should be imposed. We disagree. "Underpayment" as described in section 6653(c) is the deficiency as defined in section 6211(a) if a timely return is filed.Section 301.6653-1(c)(1)(i), Income Tax Regs. If the return was not timely filed, the "underpayment" is the amount of tax imposed under the Code. Section 301.6653-1(c)(1)(ii), Income Tax Regs. Thus, in the present case, even though there is no deficiency for the years 1961 through 1965, the negligence penalty may still be added because the returns for those years were not timely filed. We have held that in appropriate cases the negligence penalty may be assessed in addition to the late filing and payment penalty. Robinson's Dairy,35 T.C. 601, 609 (1961), affd. 302 F. 2d 42 (10th Cir. 1962); Vahram Chimchirian,42 B.T.A. 1437, 1442 (1940), affd. percuriam125 F. 2d 746 (D.C. Cir. 1942). Had it been established here that respondent relied solely on the circumstances of unaggravated late filing without reasonable *139 cause to apply the negligence penalty, an issue would have been raised of whether congressional imposition of the specific late filing and payment penalty for this delict precluded the further cumulative assertion of the negligence penalty for the same failure. However, here it has not been shown that there were no other acts of negligence or intentional disregard of rules and regulations, and we need not reach that issue. Since petitioner offered no evidence on the issue of negligence and the burden of proof was on him, Mark Bixby,58 T.C. 757, 791 (1972), we hold that petitioner is liable for additions to tax under section 6653(a). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Decedent and Jessie each had one child by previous marriages; there were two children born of this marriage.↩
3. Jessie signed these returns in blank.↩
4. Decedent sold the family home in 1965 and reported one-half the gain thereon. Respondent determined he was taxable on the entire capital gain. Respondent concedes this issue, however, if the Court determines that decedent's earnings were community property, as the Court decides, infra↩. Therefore, this issue is not further considered in this opinion.
5. This California Code citation is to a provision as numbered and in effect during the years at issue. The cited section has since been renumbered and now appears as Cal. Civil Code,↩ sec. 5110.
6. See Cal. Civil Code, sec. 172 (West 1954) (which provides that the husband has management and control over community personal property). This California Code citation is to a provision as numbered and in effect during the years at issue. The cited section has since been renumbered and amended to give either spouse management and control. It now appears as Cal. Civil Code,↩ sec. 5125.
7. Jessie has filed a petition in this Court for a determination of whether she is taxable on one-half of these earnings. Jessie's case has not yet been tried.↩