JESSIE W. HASELTINE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haseltine v. Commissioner
Docket No. 9368-72.
United States Tax Court
T.C. Memo 1979-325; 1979 Tax Ct. Memo LEXIS 206; 38 T.C.M. (CCH) 1259; T.C.M. (RIA) 79325; August 20, 1979, Filed James E. Merritt,Kim Marois,Jacqueline U. Moore, and Mary E. Oppenheimer, for the petitioner. James M. Kamman, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies and penalities in petitioner's Federal income taxes: Penalities Year
Deficiency
Sec. 6651(a)
Sec. 6654
1961
$2,868.49
$635.56
$ 64.01
1962
3,631.01
907.75
101.67
1963
614.00
153.50
17.20
1964
407.76
101.94
11.52
1965
2,470.88
617.72
66.36
After *208 concessions, the issues remaining for our decision are as follows: (1) Whether any part or all of the earnings of petitioner's former husband, Ernest D. Haseltine, Jr., during the years 1961 through 1965 was his separate property under the California community property laws; and (2) whether petitioner is entitled to an additional tax credit and additional deductions for medical expenses, exemptions, charitable contributions, alimony, interest expenses, business expenses, and attorney fees during the years at issue. These items were not allowed in computing the above deficiencies. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Jessie W. Haseltine was a resident of Santa Barbara, California, when she filed her petition in this case. She has not filed any Federal income tax returns for the years 1961 through 1965. On August 15, 1955, petitioner married Ernest D. Haseltine, Jr., now deceased, and thereafter moved to California where they resided during the years at issue. Mr. Haseltine filed delinquent Federal income tax returns as a married individual filing separately for the years 1961 through 1965. On those returns, he reported *209 only the California community property one-half share of his and petitioner's combined income and expense. In Estate of Haseltine v. Commissioner,T.C. Memo. 1976-278, a case in which petitioner was not a party, we found that Mr. Haseltine's earnings for the same years before us in the instant case were community property. Mr. Haseltine had been a life insurance underwriter in Massachusetts before marrying petitioner who was a life insurance saleswoman. During their marriage, he continued to work as a life insurance underwriter for various insurance companies. His earnings consisted of commissions and renewals from the sale of insurance policies.In some cases, renewals on the sale of a policy would continue for as long as 9 years after the policy was issued. During the years at issue, petitioner received varying amounts from a testamentary trust. These amounts were commingled with Mr. Haseltine's commissions and renewals. These funds were used for business and family expenses. In the early years of their marriage, Mr. Haseltine managed and controlled the family finances and provided petitioner with an allowance for household and personal expenses. Marital *210 problems altered this arrangement. After November 1960, petitioner received a minimal allowance for necessities and Mr. Haseltine continued handling most of the family finances. The marital problems persisted and on June 20, 1962, petitioner filed a Complaint for Separate Maintenance in the Superior Court of the State of California in and for the County of Santa Clara. This action was disposed of by a Stipulation and Order Pendente Lite filed on August 10, 1962. It provided that both parties were entitled to continue living in their home and that Mr. Haseltine was to pay petitioner $1,000 per month for the support of herself and their children. Two children were born from the Haseltine marriage and each had one child from a previous marriage. On August 15, 1964, petitioner obtained a court order evicting Mr. Haseltine from their home. Thereafter, petitioner instituted an action in Superior Court for divorce which resulted in the entry of an Interlocutory Judgment of Divorce on October 27, 1966. A Final Judgment of Divorce was entered on November 3, 1966. The Superior Court adjudicated the respective property rights of the parties and found, in part, "that all of the property *211 of the parties is community property and that the equity in the same is hereby divided equally between the parties as hereinafter specified." The court also ordered that Mr. Haseltine was to be responsible for the payment of all Federal and state income taxes, interest and penalities thereon for the time prior to July 28, 1966. In 1961, petitioner suffered a concussion, neck and back injuries, loss of coordination and speech problems as a result of a fall. Having no medical insurance, extensive medical expenses were incurred and, as a result, petitioner and her husband had to refinance their home. In the years at issue, petitioner incurred other medical expenses on behalf of herself and her children. Pursuant to a court order, she relinquished her financial records to Mr. Haseltine in 1968. The records were never returned to her. Mr. Haseltine did not claim any medical expense deductions on his Federal income tax returns for the years 1961 through 1965. Petitioner and Mr. Haseltine had two children born from their marriage: Laurie A., born November 22, 1955, and Susan, born January 27, 1957. They supported these two children from 1961 through 1964. Petitioner supported *212 them in 1965. Mr. Haseltine's daughter, Nancy, from a prior marriage, was supported by them from 1961 through 1964. Petitioner's son, Gregory, from a prior marriage, was supported by petitioner from 1961 until July 1963, when he enlisted in the military. On his 1961 and 1962 returns, Mr. Haseltine claimed three exemptions: himself, Laurie and Nancy. In 1963, 1964 and 1965, he claimed two exemptions: himself and Susan. In the years at issue, petitioner and Mr. Haseltine purchased expensive tickets to the social functions of Peninsula Volunteers, a qualified charity. Petitioner was a dues paying member of the organization and worked in its clothes resale shop. She owned clothing that had high resale value and was extravagant in purchasing clothing for herself and her children. She donated much of this expensive clothing to the organization. Mr. Haseltine claimed deductions for contributions to the charity only in 1962 and 1963 of $286.39 and $269.20, respectively. In 1965, a $5,000 judgment was entered against Mr. Haseltine for alimony owed his former wife. This was satisfied in 1965 with proceeds from the sale of the Haseltines' house. Mr. Haseltine did not deduct this *213 amount. On August 6, 1964, a judgment was entered against petitioner and Mr. Haseltine requiring them to pay the Bank of California $8,844.50. On April 29, 1965, petitioner's automobile was sold at a sheriff's sale and the proceeds were applied toward payment of the above judgment as follows: $283.75 for interest and $1,096.56 towards the principal. On May 3, 1965, a portion of the proceeds petitioner had received in settlement of a medical malpractice suit was applied to the above judgment. Of the proceeds so applied, $143.07 was for interest and $3,406.32 went towards the principal. Petitioner worked as a real estate saleswoman from August 15, 1965 through December 31, 1965. In addition to other expenses, petitioner attended a $40 real estate sales course prior to her licensing. After obtaining her license, she took a real estate taxation course for $25. While engaged in this business, she paid $100 for membership in various multiple listing associations. Mr. Haseltine claimed an estimated tax payment of $326.25 as a credit on his 1961 Federal income tax return which he filed as a married person filing a separate return. OPINION Issue 1: Character of Earnings
*214 We must determine whether Mr. Haseltine's income during the years 1961 through 1965 was community property or separate property. If his income was community property, as respondent claims, then petitioner must report one-half on a separate tax return. If his income was separate property, as petitioner contends, the entire amount should have been reported by him United States v. Malcolm,282 U.S. 792 (1931); Poe v. Seaborn,282 U.S. 101 (1930). For the reasons set forth below, we believe the earnings must be considered community property. Petitioner asserts three arguments in support of her contention that all or part of Mr. Haseltine's earnings in the years at issue is his separate property. First, she argues that Mr. Haseltine received in the years at issue various amounts of renewal commissions on life insurance policies sold by him prior to their marriage. She asserts that since those commissions were earned prior to their marriage, they remained Mr. Haseltine's separate property. We do not dispute her legal premise -- only her conclusion which must be based solely upon the record. In California, earnings of the husband acquired during marriage *215 are presumed to be community property. Cal. Civil Code, sec. 164 (West 1954). [1] Clear and satisfactory proof is required to rebut this presumption. In Re Jolly's Estate,196 Cal. 547, 238 P. 353 (1925). The character of property as separate or community is determined at the time of its acquisition. See v. See,51 Cal. Rptr. 888, 891, 415 P. 2d 776 (1966). Money earned prior to but collected after the marriage remains the separate property of the spouse who earned it. Thomasset v. Thomasset,122 Cal. App. 2d 116, 264 P. 2d 626, 631 (1953). In addition, an agreement between husband and wife can transmute community property into separate property. See v. See,supra at 415 P. 2d 776, 781. Once property is characterized as separate, such characterization is fixed and, so long as it remains segregated, it retains that character until changed either by agreement of the parties or by operation of the *216 law. If community and separate property funds become commingled to the extent that segregation is impracticable, the entire sum will be considered community property. In such a case, the party claiming any property as separate has the burden of proving that fact and the amount by clear and satisfactory proof. We recognize, however, that the mere commingling of community and separate funds does not destroy the identity of separate property so long as they can be properly identified. See v. See,supra.
Within this context, petitioner asserts that during the years at issue Mr. Haseltine received varying amounts of renewal commissions from policies sold prior to their marriage. She maintains that since these commissions were earned prior to their marriage and since they had agreed that these funds would remain his separate property, the renewal commissions were his separate property. We disagree. Petitioner offered general testimony regarding Mr. Haseltine's employment before their marriage and during the years at issue. No evidence was submitted, however, as to the precise contractual relationship he had with any insurance company. Furthermore, no written *217 contract between Mr. Haseltine and any insurance company or agency was submitted to establish the commissions that he might have earned from selling insurance for that particular company. Therefore, any attempt to establish even a percentage for renewal commissions that Mr. Haseltine might have earned after the marriage on policies sold before the marriage would be sheer speculation. Petitioner's argument also assumes that all of the policyholders who obtained an insurance policy through Mr. Haseltine prior to their marriage would continue to renew their policies for nine years. She testified that none of his policies had ever lapsed. That is simply insufficient to establish this point by clear and satisfactory proof. Moreover, there was no breakdown with respect to the date of issuance of the policies upon which the renewal commissions were based. The precise number of policies issued prior to their marriage is unknown. See Smith v. Smith,195 Cal. App. 2d 707, 16 Cal. Rptr. 99, 101 (1961). We simply find that, on the basis of our record, petitioner has not established the amount of renewal commissions which may have been separate property by clear and satisfactory *218 proof and we refuse to speculate as to such amount. The commingling of Mr. Haseltine's separate earnings with community property does make segregation difficult. Nonetheless, that does not relieve petitioner of her burden to establish by clear and convincing proof the amount, if any, of renewal commissions that were Mr. Haseltine's separate property. This she has failed to do. Petitioner's next argument is that all income earned by Mr. Haseltine after August 10, 1962, is his separate income. Her argument is based upon a California statute which states that earnings of each party after the rendition of a judgment or decree for separate maintenance are separate property. Cal. Civil Code, sec. 1691.[2] This argument assumes of course that the "Stipulation and Order Pendente Lite" of August 10, 1962, entered pursuant to a complaint for separate maintenance, constitutes a "judgment or decree" within the meaning of the statute. We find petitioner's argument unpersuasive. As noted in Lawatch v. Lawatch,161 Cal. App. 2d 780, 327 P. 2d 603, 608 (1958), *219 even if the court order is within the statutory meaning of a "judgment or decree," the conduct of the parties may cause the husband's earnings to be treated as community property. Such treatment is appropriate where the husband does nothing to indicate that he was treating any part of his earnings as his separate property as, for example, by commingling the earnings with other community property. Here the parties admitted that Mr. Haseltine's earnings were commingled with other community property. Moreover, Lawatch considered the husband's treatment of the earnings as community property on his Federal tax returns as the most significant factor requiring a finding of community property. Lawatch v. Lawatch,supra.Mr. Haseltine treated his earnings for all the years in issue as community property on his Federal tax returns. We cannot ignore such treatment and, accordingly, must reject petitioner's second argument based upon the August 10, 1962, court order. Petitioner makes a final legal argument which we also reject. She argues that all income earned by Mr. Haseltine after August 15, 1964, the date the Haseltines physically separated, is his separate income. *220 She bases her argument upon the retroactive application of a 1971 California statute which provides that earnings of a spouse living separate from the other spouse are his separate property. Cal. Civil Code, sec. 5118. In the years at issue and prior to 1971, however, the statute provided that only the earnings of the wife while living separate from her husband were her separate property. The court in In re Marriage of Bonquet,16 Cal. 3d 583, 546 P. 2d 1371 (1976), noted that the statute could be applied retroactively only in limited circumstances: In sum, we hold that amended section 5118 governs all property rights, whenever acquired, that have not been finally adjudicated by a judgment from which the time t appeal has lapsed. In re Marriage of Bonquet,supra at 546 P. 2d 1371, 1378. Here petitioner's property rights were finally adjudicated by the 1966 divorce decree -- including the determination that Mr. Haseltine was liable for Federal tax liabilities for the period prior to July 28, 1966. The fact that the precise amount of that tax liability was not determined until a subsequent date is irrelevant. *221 As a result and in accordance with the 1966 divorce decree, Mr. Haseltine's earnings after his physical separation from petitioner were not his separate property.
Accordingly, on the basis of the record before us we find that all of Mr. Haseltine's earnings in the years at issue were community property. As such, petitioner must report and is liable for taxes on one-half of those earnings. Issue 2: Additional Itemized Deductions, Personal Exemptions, Trade or Business Expenses, and Tax Credits
Petitioner seeks additional medical expense deductions under section 213(a) for one-half of the following amounts: $7,212 to $7,815 in 1961; $2,410 in 1962; $800 in 1963; $1,500 in 1964; and $550 in 1965. The only evidence introduced at trial was petitioner's testimony. Her testimony was quite detailed and credible especially considering the age of the expenditures. Moreover, the loss of petitioner's records was through no fault of her own. Considering the record as a whole, we are satisfied that all the expenses she testified she incurred were for "medical care" within the meaning of section 213. Moreover, after examining petitioner's detailed testimony we are satisfied that *222 petitioner or Mr. Haseltine paid the following amounts for medical care for themselves and their dependents in the years indicated: $7,212 in 1961; $2,410 in 1962; $800 in 1963; $1,500 in 1964; and $550 in 1965. Mr. Haseltine did not claim any medical expense deductions on his returns but we believe that due to commingled funds, these expenses were paid from community funds. Accordingly, we find that petitioner is entitled to claim one-half of these amounts. Cf. Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930). The exact amount of the allowable deduction depends upon her adjusted gross income for 1961 through 1965. Sec. 213(a). Next we must determine the number of exemptions petitioner may claim in 1961 through 1965. Mr. Haseltine had a daughter, Nancy, by a previous marriage and petitioner and Mr. Haseltine had two daughters, Laurie and Susan. In addition, petitioner had a son, Gregory, by a previous marriage who entered the military in July 1963. Thus, petitioner and Mr. Haseltine were entitled to six exemptions in 1961, 1962, and 1963. They were entitled to five exemptions in 1964 and 1965. In 1961 and 1962, Mr. Haseltine claimed three exemptions: *223 himself, Nancy and Laurie. Respondent concedes that for those years petitioner is entitled to claim three exemptions: herself, Gregory and Susan. In 1963, Mr. Haseltine claimed two exemptions and thus petitioner is entitled to claim four exemptions. In 1964, Mr. Haseltine claimed two exemptions and thus petitioner is entitled to claim three. In 1965, we find that petitioner is entitled to claim three exemptions. Next petitioner asserts that she is entitled to charitable contribution deductions under section 170 for the following amounts which were contributed to various charitable organizations: $1,135.00 in 1961; $1,286.39 in 1962; $1,285.00 in 1963; $415.00 in 1964; and $615.00 in 1965. These amounts include cash and clothing contributions. Since petitioner purchased extravagant clothing having high resale value and worked in the charitable organization's clothing resale shop, we accept as true her testimony regarding both the fact of contribution and the fair market value thereof. Thus, under the community property system which accounts for the deuctions already claimed by Mr. Haseltine, petitioner may deduct the following amounts: $1,135 in 1961; $1,000 in 1962; $1,015.80 *224 in 1963; $415 in 1964; and $615 in 1965.
Petitioner next asserts that a $5,000 alimony judgment against Mr. Haseltine for his former spouse was satisfied in 1965 from the proceeds of the sale of their home, a community property asset. Although Mr. Haseltine's return does show that the house was in fact sold in 1965, it also shows that he did not deduct any amount for alimony. Deductions for alimony payments under section 215 are conditioned on the inclusion of such payments in the former wife's gross income under section 71. As a general rule, alimony payments are includable in the wife's income only if they are periodic payments in the nature of support rather than as a result of a property settlement. Petitioner has neither shown that the $5,000 alimony judgment was the result of a support obligation rather than of a property settlement nor that Mr. Haseltine's former wife included the $5,000 judgment in her gross income in 1965. Therefore, on the basis of this record, we are unable to allow petitioner a community share of the alimony she claims Mr. Haseltine paid in 1965. Petitioner next contends she is entitled to deduct $283.75 in 1965 for interest payments to the Bank *225 of California and for $143.07 for interest portions of a principal payment. Sec. 163(a). We accept as true the circumstances of payment and the amounts thereof.Accordingly, we find she may deduct $426.82 as interest in 1965. Petitioner next asserts a deduction for costs and attorney fees paid to the Bank of California on a judgment. No showing has been made that these were other than personal expenses. Thus, they are nondeductible personal expenses.Sec. 262. Petitioner, a real estate saleswoman, also paid $100 for membership dues in various multiple listing associations. She is entitled to deduct it as a business expense. Sec. 162. Similarly, she may deduct $25 for a real estate taxation course; however, a $40 expenditure for education made before she was licensed is a nondeductible personal expense.It was designed to prepare her for a position as a licensed real estate broker. Sec. 1.162-5(b)(3), Income Tax Regs.
Finally, the parties agreed that if we determined Mr. Haseltine's income was community property in 1961, then petitioner would be entitled to a $164.13 credit for an estimated payment. We so find. To reflect the foregoing, Decision will be entered under *226 Rule 155.
Footnotes
1. Citations are to provisions as they were designated in the years at issue. This section has since been renumbered as Cal. Civil Code, sec. 5110↩.
2. Renumbered and currently found at Cal. Civil Code, sec. 5119↩.