[Civ. No. 16325.   Second Dist., Div. Three.   Nov. 16, 1948.]

L. T. LONG, Appellant, v. JOSEPHINE LONG, Respondent.

George W. Van Dyke for Appellant.

Austin & Austin for Respondent.

WOOD, J.—Plaintiff appeals from the interlocutory judgment of divorce in favor of defendant and cross-complainant, and "from the motion denying a new trial."

Plaintiff and defendant were married in March, 1940, and separated in June, 1946. On January 7, 1947, plaintiff commenced an action for divorce and alleged as the ground therefor extreme cruelty on the part of defendant. He also alleged, among other things, that the parties owned community property consisting of one lot (referred to herein as Lot 9) in Los Angeles County and an automobile, and that the titles thereto were held in the name of defendant as a matter of convenience. He prayed that the court award him all the community property; that it award custody of their 4-year-old child to defendant. Defendant filed an answer and a cross-complaint. In the cross-complaint she alleged extreme cruelty

on the part of plaintiff, and further alleged that the community property consisted of "Lot 9 . . . standing in the name of cross-complainant [defendant]; 2 lots [which adjoined each other] with dwelling house on Faulkner Avenue, Long Beach, California, standing in the name of cross-defendant [plaintiff]"; household furniture and furnishings in said house, approximately $7,000 cash in the possession of plaintiff, and additional personal property in the possession of plaintiff, the nature and value of which were unknown to defendant. She prayed that she be awarded a judgment of divorce and the community property in lieu of alimony and support money for the child. Findings of fact were waived. The court, in addition to granting the decree of divorce to defendant awarded her "the community real property consisting" of Lot 9, and the two lots and house on Faulkner Avenue "subject to an interest in said property in favor of cross-defendant [plaintiff], in the sum of Three Hundred ($300) dollars" which amount defendant was ordered to pay from the proceeds of the sale of said property. The court awarded plaintiff the automobile, household furniture and furnishings and all money in his possession. (It appearing that the child was living in New Mexico with her maternal grandmother, the trial judge made no order regarding custody or support of the child.)

The appellant contends that the court erred in awarding the two lots on Faulkner Avenue to the defendant. He asserts that he and "another party" (one Gladys M. Long, not a party herein) bought those lots before plaintiff and defendant were married, and that those lots were held in joint tenancy by him and said other person, and that the defendant had no interest in said lots. He argues further that improvements made on real property become a part of that real property, and therefore that the house (which was built on the two lots after the marriage of plaintiff and defendant) became a part of the property owned by plaintiff and the third party, and that defendant did not have any interest in it.

Plaintiff testified that prior to the marriage, he and "another party" bought the two lots for $350; and that each one contributed $175 of the purchase price. He also testified that the other person contributed $300 of the purchase price of the lots and he contributed $50 of it. He did not have the deeds to the lots with him at the time of the trial, and the deeds were not offered in evidence. After plaintiff and defendant were married they lived on the lots in a trailer

about three years, and then they began the construction of a house on the two lots. The major part of the work in constructing the house was done by plaintiff and defendant. Upon completion of the house, over a year later, the parties moved into it and lived there until the date of their separation. The plaintiff thereafter continued to occupy it as his home and was occupying it at the time of the trial.

Plaintiff testified further that the cost of the house was approximately $2,000; that part of that amount was paid from his "earnings"; that some of the money which was used to pay for the house was money he won "shooting craps"; that not much of it was from his earnings because he "loafed a lot" in order to build the house—that about $800 of it was money earned after the marriage, and about $1,200 of it was money he had when he was married; that he did not have enough money for a bank account; that formerly he carried his "pay checks" and did not cash them; that he had no idea how much money he had when he was married—it could have been more than $500 in checks; that he did not remember when he cashed the checks; that after he cashed them he "carried" the money in $100 bills; that in 1940 or 1941 he sent his wife to the bank with some $100 bills to get a $1,000 bill; that he kept that bill in different places—sometimes buried in the yard; that in 1946 he "broke" the bill to buy his wife some clothes and furniture; and that in July, 1946 (after the separation), he "broke" the bill in order to get money to live on. He also testified that during the marriage he had no money other than his earnings, and that he had no money at the time of the trial. He testified further that the co-owner of the two lots was his former housekeeper who used the name Gladys M. Long; and that he did not know where she was, and the last time he saw her was "year before last."

Defendant testified that she and plaintiff did all the work on the house except the plastering; that all the bills for construction of the house were paid from plaintiff's wages earned after the marriage; that "we paid as we built"; that plaintiff would work "and then he would lay-off while we spent that money and then after that went out he went back to work and he would build some more"; that to the best of her knowledge plaintiff had no money at the time of their marriage; that she never saw any money he had when he married her; that she did not know how much plaintiff earned after the marriage and she never saw his pay checks; that plaintiff had

no bank account; that he never told her how much money he had; that about one year before they separated plaintiff gave her some "bills" and told her to go to the bank and "cash it into a $1,000 bill"; that she brought the $1,000 bill back but she did not know what he did with it; that about four months before they separated defendant saw plaintiff exhibit two $1,000 bills to her sister.

■ The evidence was sufficient to support the trial court's implied finding that all the money used to build the house was community property. As shown above, defendant testified that the amounts expended for materials for the house and for labor were obtained from wages earned by plaintiff after the marriage. The trial judge did not believe plaintiff's assertion that the cost of the house included only $800 of his wages. At the time of announcing judgment, the judge said that he did not believe plaintiff's "story in the slightest," but that "defendant certainly had made true and correct statements." Another implied finding of the trial court, based upon substantial evidence, is that the plaintiff and defendant actually performed most of the work in constructing the house. It was a question of fact for the trial court as to whether the house was built with community funds and by the work of the parties. There were many inconsistencies in plaintiff's testimony regarding the acquisition of the money which was used to pay for the house. Defendant's testimony was sufficient to support the judgment that the house was community property. ■ Even if the lots were the separate property of the plaintiff or the property of plaintiff and the third party, the house did not lose its character as community property insofar as the defendant is concerned. The plaintiff is in error in his contention, above mentioned, to the effect that since the house was built on his separate property it also became his separate property. Buildings and improvements placed on separate property of a husband and paid for with community funds do not become the separate property of the husband in the absence of an agreement to that effect. (*Provost* v. *Provost*, 102 Cal.App. 775, 780-781 [283 P. 842]; *Estate of Chandler*, 112 Cal.App. 601, 605 [297 P. 636].)

Plaintiff contends further than the two lots on Faulkner Avenue were not community property, and that the court erred in awarding them to defendant. It is undisputed that plaintiff acquired the two lots or an interest in them before the marriage, and that defendant did not have any interest

in the lots at the time of the marriage. As above shown, the decree of divorce awarded the two lots, as community property, to defendant. ██ Separate property may be converted into community property by oral agreement. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905]; *Silverstein* v. *Silverstein*, 76 Cal.App.2d 872, 876 [174 P.2d 486].) It is not essential to show an express oral agreement, but the status of the property may be shown " 'by the very nature of the transaction or appear from the surrounding circumstances.' " (*Marvin* v. *Marvin*, 46 Cal.App.2d 551, 556 [116 P.2d 151].) The intention of the parties, with respect to the status of the property, may be shown by parol evidence. (*Huber* v. *Huber*, 27 Cal.2d 784, 789 [167 P.2d 708].) ██ The circumstances herein were such that it might properly be concluded therefrom that plaintiff intended to and did convert his interest in the two lots into community property. The evidence shows that the plaintiff and defendant were in possession of and lived on the property from the date of their marriage to the date of the separation; that they decided to build the house on the lots after they learned that the child was to be born; that the materials used in the construction of the house were purchased with community funds, and the principal part of the construction work was actually performed by plaintiff and defendant; and that the purchase price of the lots ($350) was a comparatively minor item when considered in connection with the cost of the materials for the house (about $2,000) and the value of the labor performed by the parties. Plaintiff testified that he built the house because he was "a married man" and he "should do something" for his wife. He also testified that he conveyed Lot 9 (which stood of record in defendant's name) to her "because some of the stuff was not in her name *which was owned.*" It might be inferred from that testimony that plaintiff considered that he and defendant owned property which was not in defendant's name. It might also be inferred from that testimony that the two lots were "some of the stuff," that was not in her name, "which was owned" by them. It is to be noted that plaintiff alleged in his complaint that Lot 9 (which stood of record in defendant's name) and the automobile (which was registered in her name) were community property. (At the trial, however, he asserted that the automobile was his separate property.) It does not seem reasonable to conclude that it was intended that the two lots of relatively small value should be retained

by plaintiff as his separate property, especially in view of the fact that the house thereon was built with community funds and the labor of both parties, and in view of the fact that all the other property, which stood in defendant's name, was regarded by them as community property. There was no evidence that plaintiff, prior to the commencement of this action, asserted that he considered the lots as his separate property. "[T]he finding of the trier of fact that property is separate or community, if based upon substantial evidence, even though there be evidence in conflict therewith, or if based upon evidence from which conflicting inferences may be drawn, is binding and conclusive upon an appellate court." (*Estate of Baer*, 81 Cal.App.2d 830, 833 [185 P.2d 412].)

Plaintiff's further contention that the court did not have jurisdiction to award the two lots to defendant is not sustained. He argues that since the said property "stands" of record in the names of plaintiff and a third person known as Gladys N. (M.) Long, and since "Gladys" was not made a party to said action, the court did not have jurisdiction to declare that the two lots were community property. ■ A third person who claims an interest in property which is involved in a divorce action may be made a party to the action, or he may intervene therein, in order that his alleged interest in the property may be determined in that action, but it is not essential to a determination of the property rights of the spouses that such a person be a party to the action. (*Elms* v. *Elms*, 4 Cal.2d 681, 683-684 [52 P.2d 223].) ■ If such a third party claimant is not a party to a divorce action, the alleged interest of such claimant in the property may be determined in a subsequent action between such claimant and the spouse to whom the property was awarded in the divorce action. (*Elms* v. *Elms, supra*, p. 684.) The court in the present case determined that, as between the spouses, plaintiff's interest in the lots was community property. There was no evidence, other than plaintiff's testimony, that the deeds to the lots were held in his name and that of a third person. As above stated, such purported deeds were not offered in evidence. The court did not believe that "Gladys" had any interest in the lots. At the time the court orally announced its decision it stated: "The court . . . finds that all of the house and the two lots, 78 and 79 [on Faulkner Avenue] which is in the name of plaintiff and Gladys . . . with the exception of $300 in [is] community property . . .."

He [plaintiff] hasn't told any true story here at all. I think he lied deliberately and throughout . . .. I am going to award the defendant the house and two lots. I don't think Gladys has any interest therein at all . . .."

The judgment is affirmed, and the purported appeal from the order denying the motion for a new trial is dismissed.

Shinn, P. J., and Vallée, J., concurred.