Estate of Dorothy C. Wilmot, Deceased, Chester C. Wilmot, Executor v. Commissioner.
Estate of Wilmot v. Commissioner
Docket No. 5362-67.
United States Tax Court
T.C. Memo 1970-240; 1970 Tax Ct. Memo LEXIS 119; 29 T.C.M. (CCH) 1055; T.C.M. (RIA) 70240; August 25, 1970, Filed. William D. Shaw, for the petitioner. Myron A. Weiss, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in petitioner's estate tax of $66,989.63. The issues remaining for us to decide are (1) whether one-half the proceeds of a life insurance policy on decedent's life are includable in her estate by virtue of a community property interest in the ownership of *120 the policy; and (2) whether any part 1056 of the premiums paid on the policy were gifts to the husband, the named owner of the policy, in contemplation of death, causing a portion of the premiums or proceeds to be included in decedent's estate. Findings of Fact Some of the facts have been stipulated and such facts and exhibits attached thereto are hereby incorporated by this reference. The decedent, Dorothy C. Wilmot (referred to hereafter as Dorothy or decedent), died in Los Angeles County, California, on February 14, 1963. Chester C. Wilmot (referred to hereafter as Chester) is executor of Dorothy's estate, and at the time of filing the petition herein resided in Torrance, California. Decedent's tax return was filed August 13, 1964, with the district director of internal revenue, Los Angeles, California. At all times relevant herein and until her death, Chester and Dorothy were husband and wife and were domiciled in the State of California. In January 1960 Chester, his lawyer, and two insurance representatives met and discussed the course Chester should take in adequately insuring both his life and his wife's. To provide liquidity in the event of either spouse's untimely *121 death, it was decided that life insurance policies of $100,000 should be taken out on the lives of both Chester and his wife. Chester and his advisors devised a plan whereby one policy was to be taken out with his wife as the insured and himself as the owner-beneficiary and another insuring his life with his wife, Dorothy, the owner-beneficiary. It was determined at the meeting that each policy was to be the separate property of the owner-beneficiary. While Dorothy was not present at the January meeting, she fully understood the plan and its purpose from an explanation given to her by Chester prior to the purchase of either policy. On May 6, 1960, application was made to the Equitable Life Assurance Society of the United States (referred to hereafter as Equitable) for a policy insuring the life of Dorothy, and on June 7, 1960, Equitable issued policy number 60 308 591 (referred to hereafter as the Equitable policy) listing Dorothy C. Wilmot as the insured, Chester C. Wilmot as the owner, and Chester C. Wilmot or his estate as beneficiary. The face amount of this policy was $100,000. The total premiums paid on the Equitable policy from the date of issuance to the date of Dorothy's *122 death was $12,391.54, $6,649.74 from a joint bank account and $5,741.80 from policy loans. On July 28, 1960, insurance policy number 4088261 (referred to hereafter as the Security policy) was issued by the Security Benefit Life Insurance Company on the life of Chester. Dorothy was designated the owner and beneficiary, and the face amount of the policy was $100,000. The total amount of premiums paid on the Security policy from the date of issuance to the date of Dorothy's death was $13,443.11, $9,843.11 from a joint bank account and $3,600 with loans against the policy. The premiums on both the Equitable and Security policies were paid with a combination of checks drawn on a joint checking account in the name of both Chester and Dorothy and with loans against the respective policies. The funds in the bank account on which the premium payment checks were drawn were community property. Upon Dorothy's death the Security policy was treated on her estate tax return as her separate property. The Equitable policy was treated as Chester's separate property, no portion of which was included in Dorothy's estate. Respondent determined that one-half the proceeds of the Equitable policy *123 should have been included in Dorothy's estate. Opinion The questions to be decided by us are (1) whether Dorothy possessed at her death incidents of ownership in an insurance policy on her life causing a portion of the proceeds of that policy to be included in her estate for Federal estate tax purposes under section 2042; [1] and (2) in the alternative, whether premiums on that policy were paid with funds the subject of a gift in contemplation of death within section 2035, and, if so, whether the proceeds or premiums are to be included in the estate. Chester was both the named owner and beneficiary of the Equitable policy. Dorothy had no rights at all with respect to this 1057 policy and hence no incidents of ownership warranting application of section 2042 [2] unless under California law the policy was community property giving her an undivided one-half interest in the policy. Whether an insurance policy is community or separate property initially depends on the character of the funds used to purchase it. Under California law an insurance policy purchased with the separate *124 funds of either spouse becomes the separate property of that spouse, while a policy purchased with community property funds becomes the property of the community with each spouse having an undivided one-half interest therein. Johnston v. Johnston, 236 P. 2d 212; Huber v. Huber, 27 Cal. 2d 784, 167 P. 2d 708 (1946). It is well settled that community property can be converted to the separate property of each spouse. Siberell v. Siberell, 214 Cal. 767, 7 P. 2d 1003 (1932). Therefore funds that are community property can be converted to the separate property of either or both members of the community.[3] An item purchased with these converted funds will retain its separate character. The conversion *125 from community to separate property may be accomplished by an agreement between the spouses, and in California such an agreement need not be in writing. The agreement may not only be oral, but may be implied from the circumstances surrounding the transaction. See Woods v. Security First National Bank of Los Angeles, 46 Cal. 2d 697, 299 P. 2d 657 (1956); Title Ins. & Trust Co. v. Ingersoll, 153 Cal. 1, 94 P. 94 (1908); Long v. Long, 88 Cal. App. 2d 544, 199 P. 2d 47 (1948). In the case before us a meeting was held at which the decedent was not present. At such meeting it was determined that funds in a joint checking account were to be used to pay the premiums on each of two insurance policies insuring the lives of Chester and the decedent. The funds in the checking acount were community property and unless there was an agreement between Chester and *126 Dorothy effectively converting the funds to the separate property of each, the policy must be found to be community property. Chester testified that subsequent to the meeting at which the plan was devised he explained the workings of the plan to his wife and that she fully understood the plan as well as its purpose. Dorothy knew that the rights to change the beneficiary, borrow against the policy, and to terminate it were all exclusively in Chester. Having had this made clear to her, the plan was carried out. The facts and circumstances here indicate that the separate property feature was a key aspect to the plan, that both parties knew and understood this, and the plan was carried out. From the evidence it is clear that Chester and Dorothy, prior to purchasing the policies, intended that each policy be the separate property of its owner. We believe that the surrounding circumstances and testimony of Chester show an implied agreement between him and his wife sufficient under local law to convert the funds used to purchase the insurance policies to separate property. See Nance v. United States, an unreported case ( D. Ariz. 1968, 21 A.F.T.R. 2d 1702, 68-1 USTC 12,529) *127 reaching the same result. Consequently, the Equitable policy was the separate property of Chester. Since his wife had no interest whatsoever in the policy she clearly was without any incidents of ownership within section 2042. Respondent makes the alternative claim that if there was a conversion to separate property there has been a gift of decedent's community interest in the funds used to pay the premiums on the Equitable policy and that the premiums paid within three years of decedent's death were made in contemplation of death within section 2035. [4] He goes on to argue that a portion of the 1058 proceeds are thus includable in decedent's estate. We need not address ourselves to this latter contention since we are of the opinion that there was no gift. [5] In consideration for giving up her interest in the funds used to pay the premiums on the Equitable policy, decedent received the relinquishment of her husband's interest in the funds used to pay the premiums on the Security policy which was her separate property. *128 When community property is divided between spouses each gives up an undivided one-half interest in what the other receives. Where there is an equal division there can be no gift. Commissioner v. Mills, 183 F. 2d 32 (C.A. 9, 1950), affirming 12 T.C. 468 (1949). Obviously where one spouse gives up more than the other there is a potential gift, but in the case before us Dorothy clearly did not give up a greater interest than she received. The total community property divided was $16,492.85. Of this $6,649.74 was used to pay premiums on the policy separately owned by Chester, and $9,843.11 was paid on the policy separately owned by the decedent. In dividing up the community funds the decedent clearly received more than she gave and therefore did not make a gift. Respondent in his opening statement at trial contended that the Lehman doctrine [6] should apply in this case, causing the proceeds of the Equitable policy to be included in decedent's estate. Having failed to argue this position in his briefs, we deem respondent to have abandoned the contention. *129 Decision will be entered under Rule 50. Footnotes
1. Unless otherwise specified, all statutory references are to the Internal Revenue Code of 1954.↩
2. SEC. 2042. PROCEEDS OF LIFE INSURANCE. The value of the gross estate shall include the value of all property - * * * (2) Receivable by Other Beneficiaries. - To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *↩
3. Either spouse can make a gift of his community interest to the other whereby the property then becomes the separate property of the receiving spouse. An item of community property could also be divided, each spouse taking a portion, with both owning the portion received as separate property.↩
4. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule. - The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of General Rule. - If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death * * * ↩
5. It should be noted that the district court case cited as supporting respondent's position that a portion of the proceeds, rather than the amount of premiums found to be a gift, should be brought into the estate under sec. 2035 was reversed on appeal in the Fifth Circuit. The First National Bank of Midland Texas v. United States, an unreported case ( W.D. Tex. 1968, 23 A.F.T.R. 2d 69-1806, 69-1 USTC 12,574), reversed 423 F. 2d 1286↩ (C.A. 5, 1970).
6. The Lehman doctrine, synonomously referred to as the doctrine of reciprocal trusts, provides that where A creates a trust, income to B for life remainder to a third party and B similarly creates an interrelated trust income to A for life remainder to a third party, each grantor has in effect retained a life estate in the trust he created within the meaning of section 2036, and consequently he must include the principle of the trust created in his favor in his estate. United States v. Grace, 395 U.S. 316 (1969); Lehman v. Commissioner, 109 F. 2d 99 (C.A. 2, 1940), affirming, 39 B.T.A. 17 (1939), certiorari denied 310 U.S. 637↩ (1940).