HELEN SPRINGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent CURTIS HOWE SPRINGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Springer v. Commissioner
Docket Nos. 5522-71, 5523-71.
United States Tax Court
T.C. Memo 1977-191; 1977 Tax Ct. Memo LEXIS 251; 36 T.C.M. (CCH) 782; T.C.M. (RIA) 770191; June 21, 1977, Filed; As Amended June 24, 1977. W. Owen Nitz, for the petitioners. John O. Kent, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in Federal income tax of petitioners and additions to tax for the taxable year 1967 as follows: Docket
Additions to Tax Petitioner
Number
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
Helen Springer
5522-71
$132,335.96
0
$6,617.00
Curtis Howe Springer
5523-71
132,652.40
$33,163.10
6,632.62
These cases were consolidated for trial, briefing and opinion. The following issues are presented for our decision: 1. Whether the net profit of Basic Food Products Co. for the taxable year 1967 was $412,656 *252 as contended by respondent; 2. Whether the net profit of Basic Food Products is taxable solely to Petitioner Helen Springer or taxable one-half to her and one-half to Petitioner Curtis Howe Springer; 3. Whether the failure of Petitioner Curtis Howe Springer to timely file a Federal income tax return for the taxable year 1967 was due to reasonable cause; and 4. Whether any part of petitioners' underpayment of tax for the taxable year 1967, was due to negligence or intentional disregard of the rules and regulations contained in the Internal Revenue Code of 1954. Respondent concedes that the net profits of Basic Food Products did not exceed $412,656 rather than $423,056 determined in the statutory notices of deficiency. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by this reference. At the time the petitions were filed herein, Petitioners Curtis Howe Springer and Helen Springer, husband and wife, resided in Baker, California. For the taxable year 1967 no individual Federal income tax return was filed by Petitioner Curtis Howe Springer (Dr. Springer), however, Petitioner Helen Springer electing *253 to file as a married person filing separately, filed a Federal income tax return for that year on May 10, 1968 with the Internal Revenue Service, Los Angeles, California. Basic Food Products (Basic Foods) dates back some 50 years when Dr. Springer and his father, Walter A. Springer, first produced a health food product known as Antediluvian Herb Tea in Philadelphia, Pennsylvania. This product met with some success and was sold in several thousand stores across the United States. During this time Dr. Springer became involved in radio gospel ministry, broadcasting, lecturing and holding tent revival meetings. The products produced and sold by Dr. Springer through Basic Food Products were advertised while on the air and at the lecture and revival meetings. In the early 1940's Dr. Springer found a description of mineral springs in California and sometime in September 1944 Dr. Springer and Helen LeGerda, who had been associated with Dr. Springer for some years and was subsequently to become his wife, moved to a desert area near Baker, California in search of the mineral spring. They settled in the area known as Ft. Soto, California and attempted to perfect mineral claims to approximately *254 800 acres in that area. Dr. Springer named the area "Zzyzx (prounounced Zi-zex) Mineral Springs." The property was then developed as a health resort including rehabilitation accommodations for alcoholism and the like. The minerals were used to produce the products sold under the name of Basic Food Products. In this location Dr. Springer also operates the "Dr. Curtis Howe Springer Foundation" which ostensibly operated the Zzyzx Mineral Springs. Before moving to Ft. Soto, the mixing and packaging of the 26 different products sold by Basic Foods, all of which were formulated by Dr. Springer, took place at his residence in Hollywood, California. However, on January 24, 1950, Dr. Springer conveyed to the then Helen LeGerda various assets as well as "all rights to the use of Basic Food Products, Dr. Curtis Howe Springer Foundation, and Zzyzx Mineral Springs as fictitious names" in return for some $5,500. On February 6, 1950, Dr. Springer and Helen LeGerda entered into a pre-nuptial agreement which provided, in essence, that any separate property brought into the marriage would remain separate and that any individual acquisitions made subsequent to the marriage would remain separate *255 and not joint or community property. Petitioners were married in 1950 and the pre-nuptial agreement has continued to be honored. After the marriage the Basic Food Products business was managed by Mrs. Springer with the help of Dr. Springer who also continued with his radio broadcasting and evangelistic work. In addition, throughout the 1950's and 1960's Dr. Springer prepared and directed radio gospel programs with a theme song "He's Coming Soon." Tapes for the programs were initially made in Los Angeles, but in later years broadcasting equipment was installed at Zzyzx and program tapes were made there. Dr. Springer's programs had a general gospel theme along with music of a spiritual and religious nature; in addition, he advertized the products made and distributed by Basic Foods. Radio time was purchased by Basic Foods and Dr. Springer's programs were heard on religious radio stations across the country where listening audiences would be interested in his gospel message and the kinds of products made available by Basic Foods. Throughout the taxable year 1967 Dr. Springer cooperated with Mrs. Springer and jointly conducted the operation of Basic Food Products. Prior to *256 1960 the Basic Food Products were sold and distributed by companies across the nation such as Katy Crown and Sun Drug Co. They were sold as Helen Springer Products under the Zzyzx label of Baker, California. Prices for the products which ranged from $3 to $15 were stated on the labels. Sometime in the 1950's the decision was made to discontinue sales and, instead, offer the Basic Food Products to Dr. Springer's listening audience on the Basic Foods network without a set price but instead in exchange for a contribution toward the work conducted at Zzyzx Mineral Springs. The size of contributions varied; persons in some areas of the county contributed more than others. Products were provided free to persons who did not send a contribution. Therefore, while a contribution in a particular amount was often suggested it would also be stated that no contribution was necessary. Product labels were changed to reflect the discontinuance of product prices; these new labels stated that "This product is never sold. It is given, as a token of love and appreciation, to those who contribute to our radio ministry." While some products may have been distributed as late as 1960 bearing old labels *257 which reflected a product price, no such labels were in use during the taxable year 1967. Records were maintained by Dr. Springer on "Elucidator Publication" sheets, upon which he would record the receipts attributable to each radio broadcast; these sheets were kept in a brown looseleaf binder. The sheets contained a vertical column which listed each day of the month and horizontally across the top were the call letters of each radio station which carried petitioners' broadcasts. There was also a column for repeat business when no radio station was listed in the contribution letter. Receipts would then be allocated to the day of the week based on the letter's postmark and to the radio station based upon the area from which the contribution was sent in the absence of any identification of call letters in the contribution letter. This information was provided to Dr. Springer by Mrs. Springer and Mr. Cecil Banks, an employee of Basic Foods. Mail, often numbering in the hundreds each day, was opened by Mrs. Springer and Mr. Banks and the contributions were listed on the Elucidator sheets by date and radio stations determined by them to be responsible for the product order. This *258 information was then conveyed to Dr. Springer who maintained the master Elucidator sheet showing the gross amount of contributions for each day of the month. Each day's mail was bundled with rubber bands; the date and the amount received were written on the outside, and the bundles were retained. The daily breakdown sheets were returned by Dr. Springer to Hlen Springer; however, they were not retained because the amounts had been entered on Dr. Springer's master sheets. This procedure was followed throughout the taxable year 1967. Dr. Springer used this information to decide whether his appeal was reaching people interested in Basic Food Products and to ascertain whether his relationship to any particular radio station should be canceled or retained. On her Federal income tax return for the taxable year 1967, Mrs. Springer reported gross receipts in the amount of $470,973.99 and total business expenses of $465,865.75. This return was prepared by Mr. Banks and the amount of gross receipts was compiled from the master Elucidator sheets maintained by Dr. Springer which showed the contribution receipts for the year. Gross receipts were also reflected on Mr. Bank's summary records *259 for 1967; however, the summary showed business expenses of $468,865.75--the correct figure. The procedure was followed and tax returns were prepared by Mr. Banks for a number of years preceding the taxable year 1967, including the taxable years 1965 and 1966. Expense records for Basic Foods were also maintained by Mr. Banks and were used to prepare Mrs. Springer's Federal income tax returns including the taxable year 1967. For the taxable year 1965, Dr. Springer's Elucidator master sheet showed gross receipts of $256,783. This amount was also shown on the summary record of contributions maintained by Cecil Banks. The gross receipts and expenses reflected on Mr. Banks' summary were reported on Mrs. Springer's Federal income tax return for the taxable year 1965. For the taxable year 1966 Mr. Banks' summary indicated $342,122 and $340,947.75 for gross receipts and business expenses, respectively, and these amounts were reflected on Mrs. Springer's 1966 Federal income tax return. In late October 1968 under a search warrant, officials of the California Bureau of Food and Drug, State Department of Public Health, descended upon the Springer facilities at Zzyzx and took possession *260 of some 30 boxes of business records of Basic Foods and personal records of petitioners, including the brown looseleaf binder in which Dr. Springer kept the Elucidator sheets containing his record of broadcast revenues reflecting the gross receipts of Basic Foods. Some of their records were later made available to Revenue Agent Grimes in the conduct of his audit of Mrs. Springer's tax returns. Although Dr. Springer undertook extensive efforts to regain possession, none of the records taken during the Bureau of Food and Drug search has been returned to petitioner by the State of California. However, records were made available to respondent's counsel, who subsequently returned some of the boxes of records to Dr. Springer. Among the records returned was the brown looseleaf notebook, however, only the Elucidator sheets for the last month of 1966 and most of 1968 remained; the records for 1967 were removed by unknown persons. In April 1973, after a continuing dispute with the Bureau of Land Management which began in 1961, petitioners were evicted by that agency and given some 30 hours to vacate the premises and remove the accumulation of records and possessions of some 30 years. *261 Petitioners packed and attempted to quickly move what amounted to over 200 tons of material, including records and the letters in which contributions were received. After extensive search subsequent to trial, petitioners found Dr. Springer's master Elucidator sheets for 1965 along with certain business summaries kept by Mr. Banks. In the spring of 1968, Revenue Agent Grimes made initial contact with petitioners after he received Mrs. Springer's delinquent return for the taxable year 1963. It was difficult for Agent Grimes to reconstruct the income because of poor records and because daily income records were destroyed. He was not shown the Elucidator sheets for the taxable year 1967 but was informed that the income records of Basic Foods were unavailable. Therefore, Agent Grimes undertook to reconstruct petitioners' income by an indirect method. Mr. Banks provided Agent Grimes with the list of prices which were charged for Basic Food Products according to container size in years prior to the decision to make the product available for contributions. He then reconstructed petitioners' income by determining the number of containers purchased in 1967, with additional records *262 supplied by Banks and multiplied those containers by the old sales price of each. Adjustments were made for promotional kits containing more than one container and returned products and refunds. Gross receipts under this method were determined by respondent to be $881,522. An attempt to corroborate this figure was made by the use of three other reconstruction methods. A sales price per unit weight of each product sold was determined from the labels supplied by Mr. Banks; he then multiplied this unit sales price by the weight of various materials purchased by Mrs. Springer during 1967. This method produced a figure in excess of $900,000. Another method used was a mail sampling technique based on orders and cash receipts during June 1968. Under this method, respondent projected that gross receipts for 1967 exceeded $908,000. Finally, respondent calculated gross receipts in excess of $900,000 by dividing the 1967 parcel post expense shown on Mrs. Springer's 1967 tax return of $33,813.94 by the mail-zone postal rate for that year, thus deriving an estimate of total pounds shipped which was multiplied by the average price per pound of Basic Food Products shown on the old labels *263 supplied by Mr. Banks. The Commissioner, in his statutory notice of deficiency, determined that Mrs. Springer's portion of the net profits from Basic Food Products was $211,728.24 in the taxable year 1967 and because she reported only $5,108.24 that her taxable income was understated by $206,620. The Commissioner determined that Dr. Springer realized taxable income from Basic Food Products in the amount of $211,328 for the taxable year 1967 and increased his taxable income for that year by that amount. OPINION The primary issue for our decision involves the amount of the net profits earned by Basic Food Products during the taxable year 1967. Respondent maintains that the correct figure is $412,656 while petitioners contend that the net profit for that year was only $2,108.24. The issue is entirely factual; the determination of the Commissioner is presumptively correct and the burden of proof is on petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
After carefully observing the demeanor of each witness at trial and a thorough consideration of all the circumstances of this case, we find in favor *264 of petitioners. Initially, while we realize that the Commissioner's labor was necessarily inexact due to the absence of income records for the taxable year 1967, we are unable to accept the premise underlying his determination, i.e., that the products were distributed at a set price. All of the evidence and the uncontradicted testimony of petitioners is to the contrary. The labels used by Dr. and Mrs. Springer after 1960 clearly stated that the products were not sold but instead were supplied for a contribution to their radio ministry. Moreover, contributions varied in amount and in some cases the products were supplied without a contribution. The validity of each of the methods used by respondent to corroborate his determination except the mail sampling technique is dependent upon a constant price for the products and respondent used the prices found on the labels used prior to 1960. While contribution amounts were suggested by Dr. Springer on his radio programs during the taxable year 1967 the products were supplied for amounts which bore no correlation to the pre-1960 prices. The mail sampling technique is dependent upon a relatively constant flow of contributions which *265 cannot be inferred from the record especially in view of the fluctuation in the amounts of contributions. Moreover, there is nothing to indicate that June 1968, the sampling month, was typical of any month in the taxable year 1967. At trial petitioners detailed the system of record-keeping, albeit informal, which they utilized in the operation of Basic Foods. A record of gross receipts was maintained by Dr. Springer to enable him to evaluate the response to each radio station. These records were also used by Mr. Banks to calculate gross receipts in preparation of Mrs. Springer's income tax returns because the daily Elucidator sheets were not kept. Most of petitioners' records were confiscated by the State of California in October 1968 and others were lost as a result of their eviction from Zzyzx by the Bureau of Land Management in 1973. However, some records have been introduced into evidence and they support petitioners' contention that the income earned by Basic Foods did not exceed $2,108.24 in 1967. The master Elucidator sheets for December 1966, January 1968 and all of those for 1965 were introduced into evidence and corroborated petitioners' explanation of the system *266 of recordkeeping. Summary worksheets were prepared by Mr. Banks in the ordinary course of business for the taxable years 1965 and 1966 from Dr. Springer's master Elucidator sheets for those years and the figures shown on these summaries appear on Mrs. Springer's respective individual income tax returns for both years. Gross receipts figures shown on Mr. Banks' workpapers for the taxable year 1967, the year under consideration herein, reflect the same total gross receipts reported by Mrs. Springer on her individual income tax return. Respondent has relied upon the business expense records kept by Mr. Banks for 1967 and apparently gross receipts records for other years because the audit herein began with taxable year 1963. Although the Elucidator sheets for all of 1966 except December of that year are missing, respondent has not challenged the income reported in that year on the return prepared from Mr. Banks' summary sheets showing profit and loss. These records indicate that a consistent pattern was followed in preparation of Mrs. Springer's tax returns for several years. Moreover, they corroborate petitioners' testimony in this regard and lend substantial credibility to petitioners' *267 contention that the amount of gross income was properly reported. Respondent points out that petitioners could have shown Agent Grimes the Elucidator sheets for 1967 in the spring of 1968 as the return for the taxable year 1967 was being prepared and that because they did not it is reasonable to infer that the records would indicate a substantial increase in income over 1966. There is no evidence in the record to suggest why contributions increased dramatically in 1967 over prior years. There is evidence that petitioners cooperated with respondent and made records available throughout the audit of the taxable years 1963 through 1968 and we cannot, therefore, infer that a substantial increase in revenue occurred in 1967 because of the absence of the 1967 records. After weighing petitioners' testimony at trial and considering the peculiar circumstances of this case, including the confiscation of records which were made available to respondent by the State of California and the later eviction by the Bureau of Land Management we find that the income records for 1967 were not destroyed by petitioners. We find the weight of the evidence to be in petitioners' favor and, accordingly, *268 we hold that the net profits of Basic Food Products in the taxable year 1967 did not exceed $2,108.24. Even assuming that the transfer of all right to the use of Basic Food Products, Dr. Curtis Howe Springer Foundation, Elucidator Publications and Zzyzx Mineral Springs as fictitious names is sufficient under California law to render the business assets of Basic Foods the separate property of Mrs. Springer at the time of the transfer, from the record it is clear that the conduct of the business was a joint effort of the Springers and the profits of that operation constitute community property. In California separate property may be converted into community property by written or oral agreement and such an agreement may be inferred from the nature of the transaction and the surrounding circumstances. Long v. Long,199 P.2d 47 (1948), 88 Cal. App. 2d 544. The evidence in the instant case clearly demonstrates that the business of Basic Food Products was jointly operated by Dr. and Mrs. Springer and that they agreed that the business was their company. Both worked hand-in-hand in the operation of the business. Dr. Springer's radio broadcasts advertised the products *269 sold by Basic Foods. His record of the success of particular radio stations was designed to promote favorable contribution response and he also participated in the daily operation of the business, such as mixing products and ordering ingredients. With respect to community income, Federal tax liability follows ownership. United States v. Mitchell,403 U.S. 190 (1971). Accordingly, we hold that each petitioner is liable for one-half of the net profits of Basic Foods for the taxable year 1967. Dr. Springer did not file a Federal income tax return for the taxable year 1967 and the Commissioner has asserted the penalty provided by section 6651(a). The addition to tax under this section is not applicable if "it is shown that such failure is due to reasonable cause and not due to willful neglect." The absence of willful neglect is not sufficient and petitioner has the burden of proving that his failure to file was due to reasonable cause. Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1342 (1971), affd. per curiam 496 F.2d 876 (5th Cir. 1974). Reasonable cause exists when the taxpayer establishes that he exercised ordinary business *270 care and prudence. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. There is no evidence that Dr. Springer sought advice of counsel or took any other step which would constitue reasonable cause for his failure to file. Instead he merely relies upon his belief that the income earned by Basic Foods was that of his wife. However, petitioner's belief that he is not liable for tax is not sufficient to constitute reasonable cause for failure to file a tax return. See, e.g., Saigh v. Commissioner,36 T.C. 395, 430 (1961); West Side Tennis Club v. Commissioner,39 B.T.A. 149 (1939), affd. 111 F.2d 6 (2d Cir. 1940). Accordingly, we hold that the penalty provided by section 6651(a) should be imposed on the deficiency as we have redetermined herein. The Commissioner also asserted the negligence penalty pursuant to section 6653(a) against both petitioners. Because we have found that Mrs. Springer did not underpay her tax, the imposition of the negligence penalty cannot be sustained. All of the income earned by Basic Foods was reported on Mrs. Springer's individual income tax return for the taxable year 1967 and the tax was paid. While *271 Dr. Springer was mistaken in his belief that because of the pre-nuptial agreement all the income earned by Basic Foods belonged to his wife, we are unable to conclude that his resultant underpayment of tax was due to negligence or intentional disregard of rules and regulations. Conversely the evidence indicates that Dr. Springer's underpayment was a result of a misunderstanding of the law. This is not sufficient reason for an addition to tax for negligence. See Wofford v. Commissioner,5 T.C. 1152 (1945). Accordingly, we hold that Dr. Springer is not liable for the negligence penalty provided by section 6653(a). Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩